# UNITED STATES COURT OF APPEALS

for the

# FOR THE FIRST CIRCUIT

---

Case No. 22-1987

_____

**DANIEL E. HALL,**

PLAINTIFF - APPELLANT,

- v. -

**TWITTER, INC.,**

DEFENDANT - APPELLEE.

Appeal from the United States District Court

For the District of New Hampshire

Case No. 1:20-cv-00536-SE

Judge Samantha D. Elliott

---

## APPELLANT'S PETITIONS FOR REHEARING AND REHEARING EN BANC OF THE DECEMBER 30, 2022, PANEL OPINION

Daniel E. Hall, PRO SE

Aka. Sensa Verogna

SensaVerogna@gmail.com

Dated: January 13, 2023

## INTRODUCTION

1.  Petitioner, Appellant, Daniel E. "Hall" petitions for rehearing and rehearing en banc of the December 30, 2022, Panel "Order" before Circuit Judges Lynch, Kayatta and Montecalvo, entering judgment in favor of Appellees and affirming the decision of the District Court of New Hampshire, in Case no. 22-1987, stating "that the extraordinary remedy of mandamus relief is not in order and is denied. See In re Justices of Superior Court Dep't of Massachusetts Trial Court, 218 F.3d 11, 15 (1st Cir. 2000) (general mandamus principles).

2.  Hall filed to recuse "Judge Elliott" under Section 144, 455(a) and 455(b). The basis for Hall's allegations are that Judge Elliott (1) participated in the reappointment process (2) has personal knowledge obtained outside of Hall's case such as material facts of Judge Johnstone's unofficial policy which favor the Defendant Twitter, and in doing so, still (3) voted to reappoint Magistrate Judge Johnstone to another term and thus, (4) has already pre-judged Hall's case and that, (5) it would be constitutionally intolerable for her to judge his case now.

3.  In Hall's Motion to Recuse he states that because Judge Elliot was involved with the re-appointment proceedings of Magistrate "Judge Johnstone", those same evidentiary matters at issue during the re-appointment process are the same evidentiary matters surrounding Judge Johnstone's illegal Policies are at issue in Hall's case.

## STANDARDS FOR RECUSAL

4.     The standards under 28 U.S.C. "§ 144" and "§ 455(a)" and "§ 455(b)(1)" require recusal if there is an appearance of partiality, [1] and does not require actual bias. [2] Avoiding even the appearance of impartiality is important and necessary to uphold public confidence in the integrity of the Court and its ability to make fair and impartial decisions. This is the utmost concern of the Court and one of the reasons recusal is appropriate. See McClendon v. City of Albuquerque, Civ. No. 95-24 MV/ACT, 15-16 (D.N.M. May. 15, 2009). This approach advances Congress' intent to ensure that the "courts must not only be, but must seem to be, free of bias." [3]

5.     "The goal of § 455(a) is to avoid even the appearance of partiality" and to "promote public confidence in the integrity of the judicial process.". [4] Section 455(a) typically is appropriate in cases of bias or prejudice stemming from an extrajudicial source. [5]

---

[1] See In re Martinez Catala, 129 F.3d 213, 220 (1st Cir. 1997).; United States v. Hines, 696 F.2d 722, 728 (10th Cir. 1982) (quoting United States v. Ritter, 540 F.2d 459, 462 (10th Cir.), cert. denied, 429 U.S. 951, 97 S.Ct. 370, 50 L.Ed.2d 319 (1976)); Franks v. Nimmo, 796 F.2d 1230, 1234-35 (10th Cir. 1986)
[2] See Liteky v. United States, 510 U.S. 540, 553 n.2 (1994).
[3] See In re United States, 158 F.3d 26, 36 (1st Cir. 1998)
[4] See Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 860 (1988)
[5] Liteky v. United States, 510 U.S. 540, 550-51 (1994); Chen v. Chen Qualified Settlement Fund, 552 F.3d 218, 227 (2d Cir. 2009); United States v. Furst, 886 F.2d 558, 583 (3d Cir. 1989); Berger v. United States, 255 U.S. 22, 31, 41 S.Ct. 230, 232, 65 L.Ed. 481 (1920).

6. Courts will issue a writ of mandamus requiring recusal under §455(a) when "it is clear that a reasonable person might question [the judge's] ability to remain impartial in hearing the case[.]" In re Bulger, 710 F.3d at 45. what a reasonable person knowing all the relevant facts would think about his impartiality." [6]

7. In ruling on a motion for disqualification brought under § 144, which has the same "personal bias or prejudice" language as § 455(b)(1), the Supreme Court said "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case. [7] See e.g., United States v. Alabama, 828 F.2d 1532, 1543-46 (11th Cir. 1987) (holding recusal mandatory under § 455(b)(1) where trial judge's activities had involved him in "disputed evidentiary facts"), cert. denied, 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 894 (1988). See El Fenix de Puerto Rico v. The M/Y Johanny, 36 F.3d 136, 141 n.4 (1st Cir. 1994).

---

[6] See reasonable standards concerning impartiality. See United States v. Hines, 696 F.2d 722, 728 (10th Cir. 1982) (quoting United States v. Ritter, 540 F.2d 459, 462 (10th Cir.), cert. denied, 429 U.S. 951, 97 S.Ct. 370, 50 L.Ed.2d 319 (1976))." Franks v. Nimmo, 796 F.2d 1230, 1234-35 (10th Cir. 1986) Mayes,729 F.2d at 607 (quoting United States v. Nelson,718 F.2d 315, 321 (9th Cir. 1983)); Ronwin v. State Bar of Arizona,686 F.2d 692, 700-01 (9th Cir. 1981), rev'd on other grounds sub nom. Hoover v. Ronwin,466 U.S. 558, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984).
[7] Berger v. United States, 255 U.S. 22, 31 [41 S.Ct. 230, 232, 65 L.Ed. 481]." United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966).

## STANDARDS FOR MANDAMUS

8. Mandamus is available when an order presents a question about the limits of judicial power, poses some special risk of irreparable harm to the [party seeking mandamus], and is palpably erroneous. " Id. (alterations in original) (quoting United States v. Horn, 29 F.3d 754, 769 (1st Cir. 1994), and is also available and appropriate where there is an unsettled issue of law "of substantial public importance," where the issue is "likely to recur," and where "deferral of review would potentially impair the opportunity for effective review or relief later on." [8] These standards for a mandamus were met here as Judge Elliott's clear usurpation of her power or a clear abuse of her discretion justifies this extraordinary remedy. " Graca v. Souza, 991 F.3d 60, (1st Cir. 2021).

9. The structural injuries to our federal system threatened by the district court's order are sufficient to satisfy any harm requirement that may apply to advisory mandamus cases.[9] In re Continental Investment Corp., 637 F.2d 1, 5-6 (1st Cir.1980))

---

[8] See United States v. Pleau, 680 F.3d 1, 4 (1st Cir. 2012) (en banc) (citing Horn, 29 F.3d at 769-70 ); see also In re Justs. of Superior Ct. Dep't of Mass. Trial Ct., 218 F.3d 11, 15 (1st Cir. 2000). See Horn, 29 F.3d at 769 n. 19; 16 Charles A. Wright, A. R. Miller, Edward H. Cooper, Fed. Prac and Proc. § 3934.1, at 573 & n. 5 (1996).
[9] See In re Justices of the Supreme Court of Puerto Rico, 695 F.2d at 20(noting that, even in advisory mandamus cases, petitioners must demonstrate "something about the circumstances here that would make ordinary appeal inadequate to protect their interests."

10.     On a petition for writ of mandamus the Court must "take the objective view of an informed outsider" and decide whether a reasonable, informed outsider "might question the judge's ability to remain impartial in hearing the case." [10]

## STANDARDS FOR REHEARING AND EN BANK REHEARING

11.     <u>A panel rehearing</u> is appropriate here because the panel has overlooked and misapprehended material points of law and/or facts in the record, errored in the application of the correct precedent to the facts of the case, overlooks a controlling principle law, misstates the law, is plainly incorrect and, which gives rise to a circuit split, in the decision. Fed. R. App. P. 40(a)(2). An <u>en banc rehearing</u> by this Circuit is proper here as (1) the Panel's "Opinion" on several issues conflicts with a decision of the Supreme Court or a decision of this Circuit so that consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions or (2) the case involves a question of exceptional importance because it conflicts with opinions of another courts of appeals, the Supreme Court's decisions discussed below and substantially affects a rule of national application in which there is an overriding need for national uniformity or (3) to resolve legal issues. Fed. R. App. P. 35(b).

---

[10] In re United States, 441 F.3d 44, 67 (1st Cir. 2006); In re Bulger, 710 F.3d at 45.  Where recusal is a close question, "the balance tips in favor of recusal."  In re Boston's Children First, 244 F.3d 164, 167 (1st Cir. 2011).

## REAPPOINTMENT COMMISSION

12. Judge Elliott was sworn in on Dec 22, 2021. [Appellant's Brief "AB", Exh. 5].

13. In late 2021, triggered by rule by Magistrate "Judge Johnstone", a re-appointment "Commission" was formed per statute[11], a "Merit Selection Panel" was appointed and notice to the public was sent out on or about January 2022.[12] Judge Johnstone was re-appointed by the Commission[13] and Judge Johnstone was reappointed to a second eight-year term effective June 16, 2022, despite her bad behavior.[14]

---

[11] See 28 U.S.C. § 631

[12] A key difference in the notice of reappointment consideration is that it does not take applications for the position, but rather comments on the person under consideration for reappointment. The reappointment process also includes appointment by the district court of a merit selection panel, the composition of which is the same as that appointed to consider the selection of a new Magistrate Judge. The attributes considered by the panel are much the same as those considered by panels evaluating candidates for initial appointment-- good (moral) character, judgment, legal ability, temperament, and a commitment to equal justice under the law. Magistrate book Pge. 11.

[13] The merit selection panel is appointed by majority vote of the district judges of the court. Magistrate book, Pge. 21. The court must establish a merit selection panel to assist the district judges in their determination to reappoint the incumbent. Magistrate book, Pge. 39. Normally, an incumbent magistrate judge who has performed well in the position should be reappointed to another term of office. Magistrate book, Pge. 37.

[14] The Federal Magistrate Act of 1979 (Pub. L. No. 96-82; 93 Stat. 643) established certain minimum standards and procedures for the selection and appointment of United States magistrate judges, which are codified at 28 U.S.C. § 631. In accordance with 28 U.S.C. § 631(b)(5), the Judicial Conference of the United States has promulgated the Regulations of the Judicial Conference of the United States Establishing Standards and Procedures for the Appointment and Reappointment of United States Magistrate Judges ( Id. Appendix J).

14. The tasks to be performed by the judges on the Commission are clearly nonjudicial in nature, and do not involve the exercise of Article III power to adjudicate cases and controversies. While it would be unheard of for an Article III Judge to reject the call of the President, at least in theory these three individual members of the judiciary serve voluntarily as commissioners and are empowered as such under the Act, rather than as an Article III Court. See President's Com'n on Organized Crime ("Scarfo"), 783 F.2d 370, 377 (3d Cir. 1986) (historical list of extra-judicial activities of judges). Their removal from this office by the President under 28 U.S.C. § 991(a) would leave their judicial powers intact. U.S. v. Hickernell 690 F. Supp. 272 (S.D.N.Y. 1988).

15. The majority reasoned that "[i]mpartiality is one of the central, constitutionally-ordained, requirements of the federal judicial office." Service on the Commission requires the adoption of a "pro-government perspective which is ill-suited" to the neutrality required of a judge. Even if, in fact, the judge could maintain his objectivity in carrying out his courtroom duties, the question remained whether litigants "could sustain equal faith in his impartiality." 763 F.2d at 1197. The majority accordingly concluded that "the conferral of such powers on federal judges violates the separation of powers." Id. at 1198.

16. On January 13, 2022, Hall, filed comments to the Merit Selection Panel. Within these comments, Hall cites his Rule 60 Motion filed in Case No. 1:21-cv-01047-LM., which alleges Judge Johnstone's unconstitutional bad behaviors. [Appellant's Brief "AB", Exh. 6].

17. On February 28, 2022, Hall, filed amended comments to the Merit Selection Panel, [Appellant's Brief "AB", Exh. 6], attaching his [Rule 59(e) Motion] objections filed in Case No. 1:21-cv-01047-LM, stating that he believes Judge Johnstone set in motion an unconscionable scheme calculated to interfere with the judicial systems ability to impartially adjudicate a matter by improperly influencing the trier of fact, or attempted to, utilizing ex-parte communications and by unfairly hampering the presentation of Appellant's claims through a bias and unconstitutional tribunal, which amounts to judicial misconduct.

18. On October 30, 2022, Hall filed a motion to recuse [AB, Exh. 2] stating that Judge Elliott's Commission decision disregarded Judge Johnstone's previous performance of disregarding rules, statutes and laws, and that her dual role[s] [Administrative/Judicial] gives the appearance of objective bias or partiality to be constitutionally intolerable and that she should recuse herself. See [AB, Exh. 3, 4].

19. On October 30, 2022, Hall also stated in in MOL [AB, Exh. 3]. and Declaration [AB, Exh. 4], that Judge Elliott participated in the process of voting in chambers, among other Article III judges, which voted to re-appoint Judge

Johnstone, despite her bad behavior, and was either compliant with her Article III administrative duties and has investigated Hall's claims and Judge Johnstone's illegal policy and thus has personal knowledge or "extrajudicial" information (knowledge of disputed evidentiary facts, prior conduct, prior knowledge or an administrative connection with the case), and personal knowledge of off-the-record briefings in chambers, administrative or other meetings with other justices, clerks or personnel which leave no trace in the record, and not what she has learned through [Hall's] case. and would be commingling her duties as administrator, advocate and Judge. [AB, Exh. 3, pge 16], and violate Plaintiffs Fifth Amendment rights to an impartial tribunal.[15], and that due process guarantees an absence of actual bias on the part of a judge, and that judges must not "become an advocate or otherwise use . . . judicial powers to advantage or disadvantage a party unfairly," [16]

---

[15] Due process U.S. CONST. AMEND V guarantees "an absence of actual bias" on the part of a judge. In re Murchison, 349 U.S. 133, 136 (1955).
[16]  Logue v. Dore, 103 F.3d 1040, 1045 (1st Cir. 1997); that a judge must remain detached and impartial, Reserve Mining Co. v. Lord, 529 F.2d 181, 186 (8th Cir. 1976); and that "a right to be tried by a judge who is reasonably free from bias is a part of the fundamental right to a fair trial." Nicodemus v. Chrysler Corp., 596 F.2d 152, 155-56 (6th Cir. 1979) (quoting Whitaker v. McLean, 118 F.2d 596, 596 (D.C. Cir. 1941)).

## JUDGE ELLIOT'S ROLE ON THE COMMISSION

20. Judge Elliott's position and duties performed on behalf of the Commission were purely administrative acts, rather than judicial acts, because those acts were not a function normally performed by a judge in proceedings in the First Federal District or any other U.S. District Court. See Stump, 435 at 352, 356. making it an intrajudicial circumstance, not an extrajudicial circumstance. It is well settled that Congress may delegate executive and legislative type responsibilities to the Judicial Branch if the assigned duties aid in the performance of the judicial function. See, e.g., Sibbach v. Wilson Co.,312 U.S. 1, 14, 61 S.Ct. 422, 426, 85 L.Ed. 479 (1941) (upholding delegation of authority to the Supreme Court to promulgate the Federal Rules of Civil Procedure); Chandler v. Judicial Counsel of the Tenth Circuit,398 U.S. 74, 85, 90 S.Ct. 1648, 1654, 26 L.Ed.2d 100 (1970) (Congress can create Judicial Councils in each circuit for the purpose of providing for effective administration of the business of the courts). Most recently, the Eleventh Circuit recognized that "judges are not limited to just bench-sitting, and do not violate separation of powers principles when they participate in ancillary court management tasks." In re Certain Complaints Under Investigation,783 F.2d 1488, 1503-06 (11th Cir. 1986) (relying on Chandler to uphold Congress' decision to confer investigatory powers, including subpoena power, upon the Judicial Councils to investigate

complaints of judicial misconduct). See United States v. Amesquita-Padilla, 691 F. Supp. 277, 282-83 (W.D. Wash. 1988)

21. Judge Elliott's service on the Commission impairs judicial neutrality because judge-Commissioners in this case were exposed to highly prejudicial information, and were required to "adopt a progovernment perspective which is ill suited to [a judge's] obligation to be neutral in the courtroom", considerations that led to the Eleventh Circuit's decision in Scaduto.763 F.2d at 1197-98. See In re Application of the President's Commission on Organized Crime, Subpoena of Lorenzo Scaduto, 763 F.2d 1191 (11th Cir. 1985) ( "Scaduto"). They serve as commissioners, not judges. They perform non-adjudicative duties and derive their power from their appointment solely as commissioners. "Simply put: the judges do not wear their robes in the Commission room." Scaduto, 763 F.2d at 1204 (Roney, Circuit Judge, concurring).

## EX PARTE COMMUNICATIONS CONTRIBUTING TO TAINT

22. Hall doesn't know if the Commissions proceedings were recorded. Consequently, there is no official record of what was said during those meetings and without knowledge of what was discussed at these meetings, contended that they could not respond to these "silent" facts. As we explained in City of Pittsburgh v. Simmons, 729 F.2d 953 (3d Cir. 1984). We do know that through statute, rules and duties that Judge Elliot participated in the process and proceedings of the

Commission and know that Hall's comments to the Merit Selection Panel were discussed but in the absence of the parties, Judge Johnstone or the other Article III judges were in a position to influence Judge Elliot without concern about judicial constraints or independent challenges from Hall. See In re Kensington International Ltd., 368 F.3d 289, 312 (3d Cir. 2004).

## ARGUMENT

23. This Court's rationale in these cases has been that "[p]ublic confidence- the earliest possible opportunity." In re Union Leader Corp., 292 F.2d 381, 384 (1st Cir.), cert. denied, 368 U.S. 927 (1961).

24. The right to a neutral and detached decisionmaker as interpreted by the U.S. Supreme Court resides in the Constitution's Fifth Amendment and Fourteenth Amendment guarantees to procedural due process and in the Sixth Amendment's promise of an impartial jury. Hall has a distinct legal right to the performance of Judge Elliot's legal duties and a right to an unbiased court or judge, and has no other specific or meaningful means of compelling Judge Elliott to recuse herself.

25. Hall has met the standards under 28 U.S.C. "§ 144" and "§ 455(a)" and "§ 455(b)(1)" as a reasonable person would question the appearance of Judge Elliott's partiality.

26. Section 455(b)(1) calls for recusal when a judge has "personal knowledge of disputed evidentiary facts concerning the proceeding." This rule applies to

knowledge which the judge obtained extrajudicially, e.g., through prior representation of a party, or by witnessing the events at issue in the proceeding."

27.   Through her administrative statutory duties, Judge Elliott served on the Commission, participated, [17] inquired, investigated, reviewed panel notes and comments from the public and voted (among the other Article III justices) to re-appoint Judge Johnstone although Judge Johnstone's unofficial Policies perpetuated fraud upon the court and created an unconstitutional proceeding which violated the rights of Hall, and that knowledge of a party or knowledge of disputed evidentiary facts gained "outside the case" constitutes grounds for recusal under § 455(a).[18]

28.   Because Judge Elliott has learned information concerning facts in dispute from an extrajudicial source, the court should conclude that recusal is required by Canon 3(E)(1) of the Code of Judicial Conduct requires a judge to disqualify herself in a proceeding in which the judge's impartiality might reasonably be questioned. See In re Disqualification of Murphy, 110 Ohio St. 3d 1206, 1207-8 (Ohio 2005), (Preservation of public confidence). Holsclaw v. Ivy Hall Nursing Home, Inc., No. E2016-02178-COA-T10B-CV, 9-10 (Tenn. Ct. App. Dec. 19, 2016).

---

[17] The theme is that there is an almost irrebuttable presumption that a judge is "tainted" and must be disqualified where, as here, she surrounded herself with individuals who may not be truly disinterested. (Judge Johnstone and other Article III judges who utilized Judge Johnstone's unofficial policy). See Edgar and Hall.
[18] "Implied or presumed bias is bias conclusively presumed as a matter of law." Wood, 299 U.S. at 133 Torres, 128, at 45. (implied bias disqualification is mandatory.)

29. Hall also believes he has a clear and indisputable statutory right to the issuance of the writ as the circumstances and facts of the matter demonstrate that Judge Elliot is in violation of both 144 and 455, in violation of Hall's rights to an unbiased court and that there is no other adequate means to attain his desired relief, as it is undisputable that the Court favors Twitter and their "Attorneys" and that Judge Elliott. Graca v. Souza, 991 F.3d 60, (1st Cir. 2021), which would batter Hall and violate his constitutional rights every time she or any of the Article III member judges of the Commission, makes an order.

30. The standards for a mandamus were met here as Judge Elliott's clear usurpation of her power and clear abuse of her discretion justifies this extraordinary remedy. " Graca v. Souza, 991 F.3d 60, (1st Cir. 2021), as they would cause irreparable constitutional and monetary harm and would impair Hall's opportunity for an effective review after final judgment.

31. The Panel Opinion eviscerates and undermines 28 U.S.C. § 144 and 28 U.S.C. § 455, conflicts with the US Supreme Court's and others mentioned above, conflicts with this circuits precedents; conflicts with other circuit decisions, judicial recusal doctrines which include due process rights and protections under the US Constitution and misconceives Hall's well-pleaded allegations.

32. Hall has demonstrated a clear entitlement to the requested relief and irreparable harm without it, accompanied by a favorable balance of the equities." In

re Vasquez-Botet, 464 F.3d 54, 57 (1st Cir. 2006) (citation omitted). In re Cargill, Inc., 66 F.3d 1256, 1260 (1st Cir. 1995). United States v. Horn, 29 F.3d 754, 769 (1st Cir. 1994);

33.    Without a reversal, Hall will be forced to try his case against Twitter in a Court that has given 68 favors to Twitter and it's attorneys at Perkins Coie since 2018, (2 in Hall's case), and before a judge who has gained personal knowledge of the merits of Hall's case which she gained through her participation in an Administrative Commission which investigated Judge Johnstone's unofficial policies of allowing Twitter attorneys the privilege of practicing before the bar when they lacked the requirements to do so and voted to re-hire Magistrate Johnstone.

## CONCLUSION

The District Court has not followed the standards set forth in 144 and 455, and neutrality is seriously compromised by virtue of Judge Johnstone and the remaining Article III judges participation in the Commission proceedings, a proceeding involving many of the same issues present in Hall's case. *See In re Kensington International Ltd.*, 368 F.3d 289, 308-9 (3d Cir. 2004).

>                             Respectfully submitted,
>                             DANIEL E. HALL
>                             Pro Se

CERTIFICATE OF SERVICE

I, Daniel E. Hall, certify that on this date I electronically filed the foregoing document using the CM/ECF system, which sent notification of such filing to the Defendant, through its attorneys of record to Jonathan M. Eck jeck@orr-reno.com and Julie E. Schwartz, Esq., JSchwartz@perkinscoie.com and interested party Indraneel Sur, Lead Attorney. U.S. DOJ, indraneel.sur@usdoj.gov

Dated: January 13, 2023                    /s/ Daniel E. Hall
                                           Pro Se Petitioner


I hereby certify that a copy of the attached Petition for Writ of Mandamus with attachments has been sent on this day via mail to the following:

* Courtroom Clerk to the Honorable Samantha D. Elliott, Vincent Negron via e-mail at vincent_negron@nhd.uscourts.gov.


Dated: January 13, 2023                    /s/ Daniel E. Hall
                                           Pro Se Petitioner

# CERTIFICATE OF COMPLIANCE

## Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1. This document complies with the word limit of Fed. R. App. P. 21(d)(1) because, excluding the parts of the document exempted by the Fed. R. App. P. 32(f):

    this document contains 3,807 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

    this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman, 14-point font.

Dated: January 13, 2023         */s/ Daniel E. Hall*
                                Pro Se Petitioner